IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| **COMMODITY FUTURES TRADING COMMISSION,**<br><br>       **Plaintiff,**<br><br>       **v.**<br><br>**DOUGLAS LIEN, individually and d/b/a WESTEND INVESTMENTS,**<br><br>       **Defendant.** | **Case No:**<br><br>**Hon.** _____ |

**COMPLAINT FOR INJUNCTIVE RELIEF, CIVIL MONETARY
PENALTIES, AND OTHER EQUITABLE RELIEF**

The Commodity Futures Trading Commission ("CFTC" or "Commission"), an independent federal agency, by and through its attorneys hereby alleges as follows:

## I.   INTRODUCTION

1.   Between at least September 2014 and the present ("Relevant Period"), Defendant Douglas Lien ("Lien"), individually and doing business as ("d/b/a") Westend Investments, fraudulently accepted funds from friends and acquaintances, telling them he would trade their funds in U.S. Treasury bond futures contracts in individual accounts. Throughout the Relevant Period, Lien issued to clients periodic account statements and annual tax forms that showed profits. But in late 2018, Lien began to evade client requests for their funds. He told at least one client that before having surgery in late 2018, he placed client funds under management with a broker at a futures commission merchant ("FCM") in Chicago ("FCM A"), where the funds are locked up in long-term investments.

2. In reality, Lien's clients' funds are not locked up in long-term investments at FCM A. During the Relevant Period, Lien accepted at least $827,650 from clients but did not trade those funds in commodity futures contracts, as promised. Instead, during the Relevant Period, Lien made no deposits into his futures trading account at FCM A, the only FCM at which Lien maintained a futures trading account during the Relevant Period, and placed only three trades in commodity futures contracts, for a combined loss of approximately $200. His futures trading account maintained a balance of approximately $25,000 from at least January 31, 2013, until March 2019, when he withdrew $23,000, and his account balance was approximately $1,880 as of August 2019.

3. During the Relevant Period, Lien made material misrepresentations to his clients about trading their funds in commodity futures contracts and about the location of their funds, issued clients false account statements and tax forms that showed fictitious trading profits, and misappropriated client funds.

4. By engaging in this conduct and the conduct further described herein, Lien has engaged, is engaging, or is about to engage in certain violations of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 1-26 (2012). Specifically, Lien has engaged, is engaging, or is about to engage in violations of Section 4b(a)(1)(A)-(C) of the Act, 7 U.S.C. § 6b(a)(1)(A)-(C) (2012), which makes it unlawful to cheat or defraud or attempt to cheat or defraud another person, to willfully make or cause to be made false statements to another person, and to willfully deceive or attempt to deceive another person in connection with commodity futures. Furthermore, by accepting funds from clients to margin, guarantee, or secure commodity futures trades, Lien acted as a futures commission merchant ("FCM") without being registered with the CFTC,

escaping regulatory scrutiny into his activities and violating Section 4d(a)(1) of the Act, 7 U.S.C. § 6d(a)(1) (2012).

5. Unless immediately restrained and enjoined by this Court, Lien is likely to continue engaging in the acts and practices alleged in this Complaint, and funds he fraudulently obtained may be misappropriated or otherwise dissipated. Accordingly, the CFTC brings this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), to enjoin Lien's unlawful acts and practices and to compel his compliance with the Act. The CFTC also seeks civil monetary penalties and remedial ancillary relief, including restitution to defrauded clients, disgorgement, pre- and post-judgment interest, and such other equitable relief as this Court may deem necessary and appropriate.

## II.   JURISDICTION AND VENUE

6. **Jurisdiction**. This Court has jurisdiction over this action under 28 U.S.C. § 1331 (2012) (codifying federal question jurisdiction) and 28 U.S.C. § 1345 (2012) (providing that U.S. district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress). In addition, Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a) (2012), provides that U.S. district courts have jurisdiction to hear actions brought by the Commission for injunctive and other relief or to enforce compliance with the Act whenever it shall appear to the Commission that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.

7. **Venue**. Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2012), because Lien transacted business in this District, and certain of the acts and practices in violation of the Act have occurred, are occurring, or are about to occur within this District, among other places.

### III.   PARTIES

8.   Plaintiff **Commodity Futures Trading Commission** is an independent federal regulatory agency charged by Congress with administering and enforcing the Act and CFTC Regulations ("Regulations"), 17 C.F.R. pts. 1-190 (2019).

9.   Defendant **Douglas Lien** resides in Santa Fe, New Mexico.  Lien has never been registered with the CFTC in any capacity.

10.   **Westend Investments** is a business name Lien used, including in one of his email addresses and in account agreements with clients.  Lien did not formally incorporate Westend Investments or form it as a limited liability company, nor did Lien maintain any futures trading accounts in the name of Westend Investments at any FCM registered with the CFTC.  Westend Investments has never been registered with the CFTC in any capacity.

### IV.   LIEN'S LONG-RUNNING FRAUD

11.   Lien maintains a futures trading account in his own name at FCM A, an FCM registered with the CFTC.  Lien originally opened his trading account at a different registered FCM ("FCM B") in 2001, and Lien's original account opening paperwork includes a November 25, 2001, letter to FCM B signed by Lien that states, "this is to confirm that all the funds in my account are my own and will be traded only at my discretion."  Lien's account was ultimately acquired by FCM A in 2012, and his personal trading account has remained open there since, including throughout the Relevant Period.

12.   Starting in at least 2002, Lien solicited and accepted funds from friends and acquaintances for the purpose of trading their funds in commodity futures contracts, primarily U.S. Treasury bond futures.

13.   Lien did not disclose to clients or prospective clients that he was not registered with the CFTC as an FCM.

14.     Lien typically entered into an account agreement with each new client on letterhead stating "Douglas Lien" or "Douglas Lien / westend investments." A typical agreement stated that the client's funds would be traded, that Lien would reinvest monthly income by adding it to client equity, and that Lien's fee would be 15% of net trading profits each month, calculated as gross trading profits minus broker commissions. No provision in the agreement gave Lien the right to receive any other fees or funds from the client's account.

15.     Until approximately 2010 or 2011, Lien instructed clients to wire funds to a bank account in the name of "Douglas Lien / westend investments" at a bank in Santa Fe, New Mexico. After that, and during the Relevant Period, Lien instructed clients to wire funds to an account in Lien's name at JPMorgan Chase Bank, N.A. ending in 8968.

16.     Lien socialized with his clients over the years, even inviting some of his clients to vacation with him and his wife on a private family-owned island near Martha's Vineyard, and many of Lien's clients viewed him as a friend.

17.     For years, including during the Relevant Period, Lien led his clients to believe that he profitably traded their funds, including by issuing clients periodic account statements and annual tax forms showing profits.

18.     Lien typically emailed or hand delivered to his clients account statements on a monthly or quarterly basis. Client account statements were usually sent as Word documents on letterhead stating "Douglas Lien." The statements were individualized and reflected account balances, profits, deposits or withdrawals, Lien's 15% management fees, and sometimes corrections or adjustments to prior statements. Lien typically included market commentary in his statements, and he sometimes added personal notes to clients about health, family, vacation plans, and other topics.

19. Lien also emailed or hand delivered to his clients annual tax forms, primarily handwritten Form 1099s, showing profits of as much as hundreds of thousands of dollars. The tax forms typically listed as the payer name "Douglas H. Lien," and some of them included as a descriptor "Regulated Futures Contracts." As with the periodic account statements, each tax form was individualized, reporting only a single client's profits.

20. For example, in March 2016, Lien emailed Client A an account statement for the month of January 2016. The statement reported a month-end account balance of $2,502,609, monthly "Trade/Investment" profits of $22,797, and Lien's 15% management fee on those profits, totaling $3,552. Lien's commentary in the statement included a congratulatory statement to Client A for exceeding a $2.5 million balance: "You finally made it. (I think I should have a silver – not Gold – pin made for you that signifies that you are now a member of a very select club.)." The following year, Lien emailed Client A a handwritten Form 1099 that reported his 2016 profit as $235,615 and included the description "Regulated Futures Contracts."

21. Lien accepted at least $827,650 funds from clients during the Relevant Period, and he reported more than $1.6 million in profits on tax forms he issued to clients during the Relevant Period.

22. However, at least during the Relevant Period, the account statements and tax forms that Lien sent his clients did not reflect Lien's actual futures trading results, but instead showed fake trading profits and management fees that Lien charged on those fake profits.

23. Lien maintained a trading account balance of approximately $25,000 from at least January 31, 2013, shortly after FCM A acquired Lien's account, until March 2019. During the Relevant Period, Lien made no deposits into his trading account and placed only three trades: two trades in U.S. Treasury bond futures in 2017 and one trade in mini-corn futures in 2019,

resulting in a combined net loss of approximately $200. In March 2019, Lien withdrew $23,000 of his account balance with instructions to wire the funds to a bank account in his name at JPMorgan Chase Bank, N.A. ending in 8968. Lien's current account balance at FCM A is approximately $1,880.

24. During the Relevant Period, Lien maintained no other futures trading accounts in his name at FCM A or any other FCM registered with the CFTC, nor did he maintain any futures trading accounts in the name of "Westend Investments" at any FCM registered with the CFTC.

25. Throughout 2019, several of Lien's clients have requested the return of all or a portion of their funds. While Lien has returned some of the funds requested, he has failed to disclose to clients that on multiple occasions, he paid clients using funds he received from other clients, in the manner of a Ponzi scheme, or using funds he obtained from equity lines of credit, and not using funds from clients' own account balances or trading profits. He has otherwise strung clients along with false excuses or simply ignored them.

26. For example, in 2019, Clients A and B requested funds from their accounts. Lien paid them a portion of the funds they requested in April 2019 using funds obtained from another client, in the manner of a Ponzi scheme, without disclosing the source of those funds. As of mid-June, Clients A and B had still not received the remainder of the funds they had requested. At various points, including on approximately April 24, May 25, and June 18, 2019, Lien sent Client A emails in which he blamed his delay in returning their funds in part on a change in brokers, claiming that his old broker had left for another brokerage job and that his new broker did not understand instructions delivered over the phone. These representations were false. No FCM A broker managed funds for Lien or his clients during the Relevant Period.

27.     Lien also told at least one of his clients that, prior to having heart surgery in August 2018, he placed client funds under management with an FCM A broker, who had placed the funds in long-term investments that Lien could not access without incurring penalties. These representations were also false. Neither Lien's nor his clients' funds are, or were, locked up in long-term investments at FCM A.

28.     At least during the Relevant Period, Lien misappropriated client funds, including client funds he used to pay other clients and management fees that he charged based on fake trading profits.

## V.     VIOLATIONS OF THE COMMODITY EXCHANGE ACT

### COUNT I

**Violations of Section 4b(a)(1)(A)-(C) of the Act, 7 U.S.C. § 6b(a)(1)(A)-(C) (2012):
Fraud by Misrepresentations, Material Omission, and False Statements**

29.     The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

30.     7 U.S.C. § 6b(a)(1)(A)-(C) (2012), in relevant part, makes it unlawful for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity in interstate commerce or for future delivery that is made, or to be made, on or subject to the rules of a designated contract market, for or on behalf of any other person: (A) to cheat or defraud or attempt to cheat or defraud such other person; (B) willfully to make or cause to be made to such other person any false report or statement, or willfully to enter or cause to be entered for such other person any false record; or (C) willfully to deceive or attempt to deceive such other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for such other person.

31. Lien violated 7 U.S.C. § 6b(a)(1)(A)-(C) during the Relevant Period by, among other things: making misrepresentations to his clients about trading their funds in futures contracts, the location of their funds, and why he did not return their funds as requested; failing to disclose to clients that he used client funds to pay other clients, in the manner of a Ponzi scheme, and was not registered with the CFTC as an FCM; misappropriating client funds; and issuing false periodic account statements and annual tax forms to clients.

32. Each act of misrepresenting and omitting material information and making false statements to others, including, but not limited to, those specifically alleged herein, constitutes a separate and distinct violation of 7 U.S.C. § 6b(a)(1)(A)-(C).

## COUNT II

### Violations of Section 4d(a)(1) of the Act, 7 U.S.C. § 6d(a)(1) (2012): Failure To Register as an FCM

33. The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

34. Section 1a(28) of the Act, 7 U.S.C. § 1a(28) (2012), in relevant part, defines an FCM as "an individual, association, partnership, corporation, or trust" that is "engaged in soliciting or accepting orders for . . . the purchase or sale of a commodity for future delivery" and in connection therewith, "accepts any money, securities, or property (or extends credit in lieu thereof) to margin, guarantee, or secure any trades or contracts that result or may result therefrom."

35. 7 U.S.C. § 6d(a)(1), in relevant part, makes it unlawful for any person to be an FCM unless such person is currently registered with the CFTC as an FCM.

36. Lien violated 7 U.S.C. § 6d(a)(1) by accepting money from clients to margin, guarantee, or secure commodity futures trades without being registered with the CFTC as an FCM.

37. Each act of accepting money to margin, guarantee, or secure commodity futures trades without being registered with the CFTC as an FCM, including, but not limited to, those specifically alleged herein, constitutes a separate and distinct violation of 7 U.S.C. § 6d(a)(1).

## VI. RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), and pursuant to its own equitable powers:

A. Find that Lien violated Sections 4b(a)(1)(A)-(C) and 4d(a)(1) of the Act, 7 U.S.C. § 6b(a)(1)(A)-(C), 6d(a)(1) (2012);

B. Enter an order of permanent injunction enjoining Lien, and his affiliates, agents, servants, employees, successors, assigns, attorneys, and all persons or entities in active concert with them, who receive actual notice of such order by personal service or otherwise, from directly or indirectly engaging in the conduct described above, in violation of 7 U.S.C. §§ 6b(a)(1)(A)-(C), 6d(a)(1).

C. Enter an order of permanent injunction enjoining Lien, and his affiliates, agents, servants, employees, successors, assigns, attorneys, and all persons or entities in active concert with them, who receive actual notice of such order by personal service or otherwise, from directly or indirectly:

   1. Trading on or subject to the rules of any registered entity (as that term is defined by Section la(40) of the Act, 7 U.S.C. § la(40) (2012));

   2. Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3, 17 C.F.R. § 1.3 (2019)) for accounts

        held in the name of Lien or for accounts in which Lien has a direct or indirect interest;

3. Having any commodity interests traded on Lien's behalf;

4. Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

5. Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

6. Applying for registration or claiming exemption from registration with the CFTC in any capacity, and engaging in any activity requiring such registration or exemption from registration with the CFTC, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2019); and

7. Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2019)), agent, or any other officer or employee of any person registered, exempted from registration, or required to be registered with the CFTC, except as provided for in 17 C.F.R. § 4.14(a)(9).

D. Enter an order directing Lien, as well as any third-party transferee and/or successors thereof, to disgorge, pursuant to such procedure as the Court may order, all benefits received, including, but not limited to, salaries, commissions, loans, fees, revenues, and trading profits derived, directly or indirectly, from acts or practices which constitute violations of the Act as described herein, including pre-judgment and post-judgment interest;

E.	Enter an order requiring Lien, as well as any successors thereof, to make full restitution to every person who has sustained losses proximately caused by the violations described herein, including pre-judgment and post-judgment interest;

F.	Enter an order directing Lien, as well as any successors thereof, to rescind, pursuant to such procedures as the Court may order, all contracts and agreements, whether implied or express, entered into between, with, or among Lien and any of the clients whose funds were received by Lien as a result of the acts and practices that constituted violations of the Act, as described herein;

G.	Enter an order directing Lien to pay a civil monetary penalty assessed by the Court, in an amount not to exceed the penalty prescribed by Section 6c(d)(1) of the Act, 7 U.S.C. § 13a-1(d)(1) (2012), as adjusted for inflation pursuant to the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. 114-74, tit. VII, § 701, 129 Stat. 584, 599–600, *see* Regulation 143.8, 17 C.F.R. § 143.8 (2019), for each violation of the Act, as described herein;

H.	Enter an order requiring Lien to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2413(a)(2) (2012); and

I.	Enter an order providing such other and further relief as this Court may deem necessary and appropriate under the circumstances.

Date: December 9, 2019

Respectfully submitted,
ATTORNEYS FOR PLAINTIFF
COMMODITY FUTURES TRADING COMMISSION

/s/ Susan B. Padove
Senior Trial Attorney
Federal Bar No. 19-248 (New Mexico)
(312) 596-0544
spadove@cftc.gov

David Terrell
Chief Trial Attorney
Federal Bar No. 19-205 (New Mexico)
(312) 596-0539
dterrell@cftc.gov

Scott R. Williamson
Acting Deputy Director
Illinois A.R.D.C. No. 6191293
(312) 596-0560
swilliamson@cftc.gov

Commodity Futures Trading Commission
Division of Enforcement
525 W. Monroe Street, Suite 1100
Chicago, Illinois 60661
(312) 596-0700 (Office Number)
(312) 596-0714 (facsimile)