UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | )<br>)<br>) |
| Plaintiff, | )<br>)<br>) |
| v. | ) Case No.: 19-cv-1153 WJ/SCY |
| DOUGLAS LIEN, individually and d/b/a WESTEND INVESTMENTS, | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

**CONSENT ORDER FOR PERMANENT INJUNCTION, CIVIL MONETARY PENALTY AND OTHER EQUITABLE RELIEF AGAINST DEFENDANT DOUGLAS LIEN, individually and d/b/a WESTEND INVESTMENTS**

### I. INTRODUCTION

On December 9, 2019, Plaintiff Commodity Futures Trading Commission ("Commission" or "CFTC") filed a Complaint against Defendant Douglas Lien, individually and d/b/a Westend Investments ("Lien") seeking injunctive and other equitable relief, as well as the imposition of civil penalties, for violations of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 1–26 (2018), and the Commission's Regulations ("Regulations") promulgated thereunder, 17 C.F.R. pts. 1–190 (2020). The Court entered a Consent Order for Preliminary Injunction and Other Ancillary Relief against Defendant Lien on December 11, 2019.

### II. CONSENTS AND AGREEMENTS

To effect settlement of all charges alleged in the Complaint against Defendant Lien without a trial on the merits or any further judicial proceedings, Defendant Lien:

1. Consents to the entry of this Consent Order for Permanent Injunction, Civil Monetary Penalty, and Other Equitable Relief Against Defendant Douglas Lien, individually and d/b/a Westend Investments ("Consent Order");

2. Affirms that he has read and agreed to this Consent Order voluntarily, and that no promise, other than as specifically contained herein, or threat, has been made by the Commission or any member, officer, agent, or representative thereof, or by any other person, to induce this Consent Order;

3. Acknowledges service of the summons and Complaint;

4. Admits the jurisdiction of this Court over him and the subject matter of this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2018);

5. Admits the jurisdiction of the Commission over the conduct and transactions at issue in this action pursuant to the Act;

6. Admits that venue properly lies with this Court pursuant to 7 U.S.C. § 13a-1(e);

7. Waives:

   i. Any and all claims that he may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 (2018) and 28 U.S.C. § 2412 (2018), and/or the rules promulgated by the Commission in conformity therewith, Part 148 of the Regulations, 17 C.F.R. pt. 148 (2020), relating to, or arising from, this action;

   ii. Any and all claims that he may possess under the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104-121, tit. II, §§ 201–253, 110 Stat. 847, 857–74 (codified as amended at 28 U.S.C. § 2412 and in scattered sections of 5 U.S.C. and 15 U.S.C.), relating to, or arising from, this action;

   iii. Any claim of Double Jeopardy based upon the institution of this action or the entry in this action of any order imposing a civil monetary penalty or any other relief, including this Consent Order; and

   iv. Any and all rights of appeal from this action;

8.    Agrees that he will not oppose enforcement of this Consent Order on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure and hereby waives any objection based thereon;

9.    Agrees that neither he nor any of his agents or employees under his authority or control shall take any action or make any public statement denying, directly or indirectly, any allegation in the Complaint or the Findings of Fact or Conclusions of Law in this Consent Order, or creating or tending to create the impression that the Complaint and/or this Consent Order is without a factual basis; provided, however, that nothing in this provision shall affect his: (a) testimonial obligations, or (b) right to take legal positions in other proceedings to which the Commission is not a party.  Defendant shall comply with this agreement, and shall undertake all steps necessary to ensure that all of his agents and/or employees under his authority or control understand and comply with this agreement;

10.    Admits to all of the findings made in this Consent Order and all of the allegations in the Complaint;

11.    Consents to the use of the findings and conclusions in this Consent Order in this proceeding and in any other proceeding brought by the Commission or to which the Commission is a party or claimant, and agrees that they shall be taken as true and correct and be given preclusive effect therein, without further proof;

12.    Does not consent, however, to the use of this Consent Order, or the findings and conclusions herein, as the sole basis for any other proceeding brought by the Commission or to which the Commission is a party, other than a:  statutory disqualification proceeding; proceeding in bankruptcy, or receivership; or proceeding to enforce the terms of this Consent Order;

13. Agrees to provide immediate notice to this Court and the Commission by certified mail, in the manner required by paragraph 60 of Part V. of this Consent Order, of any bankruptcy proceeding filed by, on behalf of, or against him, whether inside or outside the United States; and

14. Agrees that no provision of this Consent Order shall in any way limit or impair the ability of any other person or entity to seek any legal or equitable remedy against him in any other proceeding.

### III.   FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court, being fully advised in the premises, finds that there is good cause for the entry of this Consent Order and that there is no just reason for delay. The Court therefore directs the entry of the following Findings of Fact, Conclusions of Law, permanent injunction and equitable relief pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2018), as set forth herein.

**THE COURT HEREBY FINDS:**

**A.   Findings of Fact**

**The Parties to this Consent Order**

15. Plaintiff Commodity Futures Trading Commission is an independent federal regulatory agency that is charged by Congress with administering and enforcing the Act and the Regulations.

16. Defendant Douglas Lien is 79 years old, resides in Santa Fe, New Mexico and has never been registered with the Commission in any capacity.

**Lien's Long-Running Fraud**

17. Lien maintains a futures trading account in his own name at a futures commission merchant ("FCM A") registered with the CFTC. Lien originally opened his trading account at a different registered FCM ("FCM B") in 2001, and Lien's original account opening paperwork

4

includes a November 25, 2001, letter to FCM B signed by Lien that states, "this is to confirm that all the funds in my account are my own and will be traded only at my discretion." Lien's account was ultimately acquired by FCM A in 2012, and his personal trading account has remained open there since.

18. Starting in at least August 2000, Lien solicited and accepted funds from friends and acquaintances for the purpose of trading their funds in commodity futures contracts, primarily U.S. Treasury bond futures.

19. Lien did not disclose to clients or prospective clients that he was not registered with the CFTC as an FCM or any other capacity.

20. Lien typically entered into an account agreement with each new client on letterhead stating "Douglas Lien" or "Douglas Lien / westend investments." A typical agreement stated that the client's funds would be traded, that Lien would reinvest monthly income by adding it to client equity, and that Lien's fee would be 15% of net trading profits each month, calculated as gross trading profits minus broker commissions. No provision in the agreement gave Lien the right to receive any other fees or funds from the client's account.

21. Until approximately 2010 or 2011, Lien instructed clients to wire funds to a bank account in the name of "Douglas Lien / westend investments" at a bank in Santa Fe, New Mexico. After that, and during the Relevant Period, Lien instructed clients to wire funds to an account in Lien's name at JPMorgan Chase Bank, N.A. ending in 8968.

22. Lien socialized with his clients over the years, even inviting some of his clients to vacation with him and his wife on a private family-owned island near Martha's Vineyard, and many of Lien's clients viewed him as a friend.

23.     For years, including during the Relevant Period, Lien led his clients to believe that he profitably traded their funds, including by issuing clients periodic account statements and annual tax forms showing profits.

24.     Lien typically emailed or hand delivered to his clients account statements on a monthly or quarterly basis.  Client account statements were usually sent as Word documents on letterhead stating "Douglas Lien."  The statements were individualized and reflected account balances, profits, deposits or withdrawals, Lien's 15% management fees, and sometimes corrections or adjustments to prior statements.  Lien typically included market commentary in his statements, and he sometimes added personal notes to clients about health, family, vacation plans, and other topics.

25.     Lien also emailed or hand delivered to his clients annual tax forms, primarily handwritten Form 1099s, showing profits of as much as hundreds of thousands of dollars.  The tax forms typically listed as the payer name "Douglas H. Lien," and some of them included as a descriptor "Regulated Futures Contracts."  As with the periodic account statements, each tax form was individualized, reporting only a single client's profits.

26.     For example, in March 2016, Lien emailed Client A an account statement for the month of January 2016.  The statement reported a month-end account balance of $2,502,609, monthly "Trade/Investment" profits of $22,797, and Lien's 15% management fee on those profits, totaling $3,552.  Lien's commentary in the statement included a congratulatory statement to Client A for exceeding a $2.5 million balance: "You finally made it.  (I think I should have a silver – not Gold – pin made for you that signifies that you are now a member of a very select club.)."  The following year, Lien emailed Client A a handwritten Form 1099 that reported his 2016 profit as $235,615 and included the description "Regulated Futures Contracts."

27. Lien accepted $14,275,632 in funds from clients from August 17, 2000 to the present and he also reported more than $1.7 million in profits on tax forms he issued to clients during the period from 2014 to 2018.

28. However, the account statements and tax forms that Lien sent his clients did not reflect Lien's actual futures trading results, but instead showed fake trading profits and management fees that Lien charged on those fake profits.

29. Lien maintained a trading account balance of approximately $25,000 from at least January 31, 2013, shortly after FCM A acquired Lien's account, until March 2019. During the Relevant Period, Lien made no deposits into his trading account and placed only three trades: two trades in U.S. Treasury bond futures in 2017 and one trade in mini-corn futures in 2019, resulting in a combined net loss of approximately $200. In March 2019, Lien withdrew $23,000 of his account balance with instructions to wire the funds to a bank account in his name at JPMorgan Chase Bank, N.A. ending in 8968. Lien's current account balance at FCM A is approximately $1,880.

30. From at least January 31, 2013 to the present, Lien maintained no other futures trading accounts in his name at FCM A or any other FCM registered with the CFTC, nor did he maintain any futures trading accounts in the name of "Westend Investments" at any FCM registered with the CFTC.

31. Throughout 2019, several of Lien's clients requested the return of all or a portion of their funds. While Lien has returned some of the funds requested, he failed to disclose to clients that on multiple occasions, he paid clients using funds he received from other clients, in the manner of a Ponzi scheme, or using funds he obtained from equity lines of credit, and not

using funds from clients' own account balances or trading profits. He has otherwise strung clients along with false excuses or simply ignored them.

32. For example, in 2019, Clients A and B requested funds from their accounts. Lien paid them a portion of the funds they requested in April 2019 using funds obtained from another client, in the manner of a Ponzi scheme, without disclosing the source of those funds. As of mid-June, Clients A and B had still not received the remainder of the funds they had requested. At various points, including on approximately April 24, May 25, and June 18, 2019, Lien sent Client A emails in which he blamed his delay in returning their funds in part on a change in brokers, claiming that his old broker had left for another brokerage job and that his new broker did not understand instructions delivered over the phone. These representations were false. No FCM A broker managed funds for Lien or his clients from at least 2018 through the present.

33. Lien also told at least one of his clients that, prior to having heart surgery in August 2018, he placed client funds under management with an FCM A broker, who had placed the funds in long-term investments that Lien could not access without incurring penalties. These representations also were false. Neither Lien's nor his clients' funds are, or were, locked up in long-term investments at FCM A.

34. From August 17, 2000 to the present, Lien misappropriated $5,195,679 in client funds, including client funds he used to pay other clients and "management fees" that he charged based on fake trading profits. Of that sum, Lien kept $3,517,373 for himself as these management fees.

B.   **Conclusions of Law**

**Jurisdiction and Venue**

35.   This Court possesses jurisdiction over this action pursuant to 28 U.S.C. § 1331 (2018) (codifying federal question jurisdiction) and 28 U.S.C. § 1345 (2018) (providing that U.S. district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress).  Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a) (2018), provides that the Commission may bring actions for injunctive relief or to enforce compliance with the Act or any rule, regulation, or order thereunder in the proper district court of the United States whenever it shall appear to the Commission that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.

36.   Venue properly lies with this Court pursuant to 7 U.S.C. § 13a-1(e), because the Defendant resides in this jurisdiction and the acts and practices in violation of the Act occurred within this District.

**Fraud by Misappropriation, Misrepresentations, Material Omission, and False Statements**

37.   Section 4b(a)(1)(A)-(C) of the Act, 7 U.S.C. § 6b(a)(1)(A)-(C) (2018), in relevant part, makes it unlawful for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity in interstate commerce or for future delivery that is made, or to be made, on or subject to the rules of a designated contract market, for or on behalf of any other person:  (A) to cheat or defraud or attempt to cheat or defraud such other person; (B) willfully to make or cause to be made to such other person any false report or statement, or willfully to enter or cause to be entered for such other person any false record; or (C) willfully to deceive or attempt to deceive such other person by any means whatsoever in regard to any order

9

or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for such other person.

38. Lien violated 7 U.S.C. § 6b(a)(1)(A)-(C) from August 17, 2000 to the present by, among other things: making misrepresentations to his clients about trading their funds in futures contracts, the location of their funds, and why he did not return their funds as requested; failing to disclose to clients that he used client funds to pay other clients, in the manner of a Ponzi scheme, and was not registered with the CFTC as an FCM; misappropriating client funds; and issuing false periodic account statements and annual tax forms to clients.

39. Each act of misrepresenting and omitting material information and making false statements to others, including, but not limited to, those specifically alleged herein, constitutes a separate and distinct violation of 7 U.S.C. § 6b(a)(1)(A)-(C).

**Failure to Register as an FCM**

40. Section 1a(28) of the Act, 7 U.S.C. § 1a(28) (2018), in relevant part, defines an FCM as "an individual, association, partnership, corporation, or trust" that is "engaged in soliciting or accepting orders for . . . the purchase or sale of a commodity for future delivery" and in connection therewith accepts any money, securities, or property (or extends credit in lieu thereof) to margin, guarantee, or secure any trades or contracts that result or may result therefrom."

41. Section 4d(a)(1) of the Act, 7 U.S.C. § 6d(a)(1) (2018), in relevant part, makes it unlawful for any person to be an FCM unless such person is currently registered with the CFTC as an FCM.

42.   Lien violated 7 U.S.C. § 6d(a)(1) by accepting money from clients to margin, guarantee, or secure commodity futures trades without being registered with the CFTC as an FCM.

43.   Each act of accepting money to margin, guarantee, or secure commodity futures trades without being registered with the CFTC as an FCM, including, but not limited to, those specifically alleged herein, constitutes a separate and distinct violation of 7 U.S.C. § 6d(a)(1).

## IV.   PERMANENT INJUNCTION

**IT IS HEREBY ORDERED THAT:**

44.   Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2018), Lien is permanently restrained, enjoined and prohibited from directly or indirectly:

a.  Cheating or defrauding, or attempting to cheat or defraud, or willfully deceiving or attempting to deceive other persons in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery that is made, or to be made, on or subject to the rules of a designated contract market, for or on behalf of any other person, in violation of Section 4b(a)(1)(A)-(C) of the Act, 7 U.S.C. § 6b(a)(1)(A)-(C) (2018);

b.  Accepting money to margin, guarantee, or secure commodity futures trades without being registered with the CFTC as an FCM, in violation of Section 4d(a)(1) of the Act, 7 U.S.C. § 6d(a)(1) (2018).

45.   Lien is also permanently restrained, enjoined and prohibited from directly or indirectly:

a. Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40) (2018);

b. Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3, 17 C.F.R. § 1.3 (2020)) for his own personal accounts or for any account in which he has a direct or indirect interest;

c. Having any commodity interests traded on his behalf;

d. Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

e. Soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

f. Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2020); and/or

g. Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2020)), agent or any other officer or employee of any person (as that term is defined in 7 U.S.C. § 1a(38)), registered, exempted from registration or required to be registered with the Commission except as provided for in 17 C.F.R. § 4.14(a)(9).

## V.   RESTITUTION AND CIVIL MONETARY PENALTY

**A.   Restitution**

46.   Defendant shall pay restitution in the amount of **Five Million One Hundred Ninety-Five Thousand Six Hundred Seventy-Nine Dollars ($5,195,679)** ("Restitution Obligation").  If the Restitution Obligation is not paid immediately, post-judgment interest shall accrue on the Restitution Obligation beginning on the date of entry of this Consent Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Consent Order pursuant to 28 U.S.C. § 1961 (2018).

47.   To effect payment of the Restitution Obligation and the distribution of any restitution payments to Defendant's clients, the Court appoints the National Futures Association ("NFA") as Monitor ("Monitor").  The Monitor shall receive restitution payments from Defendant and make distributions as set forth below.  Because the Monitor is acting as an officer of this Court in performing these services, the NFA shall not be liable for any action or inaction arising from NFA's appointment as Monitor, other than actions involving fraud.

48.   Defendant shall make Restitution Obligation payments, and any post-judgment interest payments, under this Consent Order to the Monitor in the name "Lien—Settlement Fund" and shall send such payments by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's check, or bank money order, to the Office of Administration, National Futures Association, 300 South Riverside Plaza, Suite 1800, Chicago, IL 60606 under cover letter that identifies the paying Defendant and the name and docket number of this proceeding. Defendant shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581 and to Deputy Director,

Robert T. Howell, Commodity Futures Trading Commission, Division of Enforcement, 525 W. Monroe St., Suite 1100, Chicago, IL 60661.

49. The Monitor shall oversee the Restitution Obligation and shall have the discretion to determine the manner of distribution of such funds in an equitable fashion to Defendant's clients identified by the Commission or may defer distribution until such time as the Monitor deems appropriate. In the event that the amount of Restitution Obligation payments to the Monitor are of a *de minimis* nature such that the Monitor determines that the administrative cost of making a distribution to eligible clients is impractical, the Monitor may, in its discretion, treat such restitution payments as civil monetary penalty payments, which the Monitor shall forward to the Commission following the instructions for civil monetary penalty payments set forth in Part B. below.

50. Lien shall cooperate with the Monitor as appropriate to provide such information as the Monitor deems necessary and appropriate to identify Defendant's clients to whom the Monitor, in its sole discretion, may determine to include in any plan for distribution of any Restitution Obligation payments. Lien shall execute any documents necessary to release funds that he has in any repository, bank, investment or other financial institution, wherever located, in order to make partial or total payment toward the Restitution Obligation.

51. The Monitor shall provide the Commission at the beginning of each calendar year with a report detailing the disbursement of funds to Defendant's clients during the previous year. The Monitor shall transmit this report under a cover letter that identifies the name and docket number of this proceeding to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

52. The amounts payable to each client shall not limit the ability of any client from proving that a greater amount is owed from Defendant or any other person or entity, and nothing herein shall be construed in any way to limit or abridge the rights of any client that exist under state or common law.

53. Each client of Defendant who suffered a loss is explicitly made an intended third-party beneficiary of this Consent Order and may seek to enforce compliance with this Consent Order to obtain satisfaction of any portion of the restitution that has not been paid by Defendant.

54. To the extent that any funds accrue to the U.S. Treasury for satisfaction of Defendant's Restitution Obligation, such funds shall be transferred to the Monitor for disbursement in accordance with the procedures set forth above.

**B.    Civil Monetary Penalty**

55. Defendant shall pay a civil monetary penalty in the amount of **Five Million One Hundred Ninety-Five Thousand Six Hundred Seventy-Nine Dollars ($5,195,679)** ("CMP Obligation"). If the CMP Obligation is not paid immediately, then post-judgment interest shall accrue on the CMP Obligation beginning on the date of entry of this Consent Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Consent Order pursuant to 28 U.S.C. § 1961.

56. Defendant shall pay his CMP Obligation and any post-judgment interest, by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order. If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

      MMAC/ESC/AMK326
      Commodity Futures Trading Commission
      Division of Enforcement
      6500 S. MacArthur Blvd.
      HQ Room 181
      Oklahoma City, OK 73169
      (405) 954-6569 office
      (405) 954-1620 fax
      9-AMC-AR-CFTC@faa.gov

If payment by electronic funds transfer is chosen, Defendant shall contact Marie Thorne or her successor at the address above to receive payment instructions and shall fully comply with those instructions. Defendant shall accompany payment of the CMP Obligation with a cover letter that identifies Defendant and the name and docket number of this proceeding. Defendant shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581 and to Deputy Director, Robert T. Howell, Commodity Futures Trading Commission, Division of Enforcement, 525 W. Monroe St., Suite 1100, Chicago, IL 60661.

**C. Provisions Related to Monetary Sanctions**

  57. Partial Satisfaction: Acceptance by the Commission or the Monitor of any partial payment of Defendant's Restitution Obligation, or CMP Obligation shall not be deemed a waiver of his obligation to make further payments pursuant to this Consent Order, or a waiver of the Commission's right to seek to compel payment of any remaining balance.

  58. Asset Freeze: On December 11, 2019, the court entered a Consent Order of preliminary injunction that included an asset freeze order prohibiting the transfer, removal, dissipation and disposal of Defendant's assets ("Asset Freeze Order"). Funds frozen pursuant to

the Asset Freeze shall be released to the Monitor to help satisfy the Restitution Obligation and the court hereby lifts the Asset Freeze Order.

## VI.   MISCELLANEOUS PROVISIONS

59. Notice:  All notices required to be given by any provision in this Consent Order shall be sent certified mail, return receipt requested, as follows:

Notice to Commission:

> Robert T. Howell
> Deputy Director
> Commodity Futures Trading Commission
> Division of Enforcement
> 525 W. Monroe Street
> Suite 1100
> Chicago, IL 60661

Notice to Defendant:

> Douglas Lien, individually and d/b/a Westend Investments,
> 37 Camino Tetzcoco
> Santa Fe, New Mexico 87508

All such notices to the Commission shall reference the name and docket number of this action.

60. Change of Address/Phone:  Until such time as Defendant satisfies in full his Restitution Obligation, and CMP Obligation as set forth in this Consent Order, Defendant shall provide written notice to the Commission by certified mail of any change to his telephone number and mailing address within ten calendar days of the change.

61. Entire Agreement and Amendments:  This Consent Order incorporates all of the terms and conditions of the settlement among the parties hereto to date.  Nothing shall serve to amend or modify this Consent Order in any respect whatsoever, unless:  (a) reduced to writing; (b) signed by all parties hereto; and (c) approved by order of this Court.

62. Invalidation:  If any provision of this Consent Order or if the application of any provision or circumstance is held invalid, then the remainder of this Consent Order and the application of the provision to any other person or circumstance shall not be affected by the holding.

63. Waiver:  The failure of any party to this Consent Order or of any client at any time to require performance of any provision of this Consent Order shall in no manner affect the right of the party or client at a later time to enforce the same or any other provision of this Consent Order.  No waiver in one or more instances of the breach of any provision contained in this Consent Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Consent Order.

64. Waiver of Service, and Acknowledgement:  Defendant waives service of this Consent Order and agrees that entry of this Consent Order by the Court and filing with the Clerk of the Court will constitute notice to the Defendant of its terms and conditions.  Defendant further agrees to provide counsel for the Commission, within thirty days after this Consent Order is filed with the Clerk of Court, with an affidavit or declaration stating that Defendant has received and read a copy of this Consent Order.

65. Injunctive and Equitable Relief Provisions:  The injunctive and equitable relief provisions of this Consent Order shall be binding upon Defendant, upon any person under their authority or control, and upon any person who receives actual notice of this Consent Order, by personal service, e-mail, facsimile or otherwise insofar as he or she is acting in active concert or participation with Defendant.

66. Counterparts and Facsimile Execution:  This Consent Order may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall

become effective when one or more counterparts have been signed by each of the parties hereto and delivered (by facsimile, e-mail, or otherwise) to the other party, it being understood that all parties need not sign the same counterpart.  Any counterpart or other signature to this Consent Order that is delivered by any means shall be deemed for all purposes as constituting good and valid execution and delivery by such party of this Consent Order.

67. Defendant understands that the terms of the Consent Order are enforceable, and that, in any such proceedings he may not challenge the validity of this Consent Order.

68. Agreements and Undertakings:  Defendant shall comply with all of the undertakings and agreements set forth in this Consent Order.

There being no just reason for delay, the Clerk of the Court is hereby ordered to enter this *Consent Order for Permanent Injunction, Civil Monetary Penalty and Other Equitable Relief Against Defendant Douglas Lien, individually and d/b /a Westend Investments,* forthwith and without further notice.

**IT IS SO ORDERED.**

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE